# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:18CR00025-013 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **JAMES SKYLER SEBASTIAN,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Michelle C.F. Derrico, COPENHAVER, ELLETT & DERRICO, Roanoke, Virginia, for Defendant.*

The issue before the court is the proper advisory sentencing guideline scoring for a defendant convicted of trafficking methamphetamine.

The defendant, James Skyler Sebastian, pleaded guilty without a plea agreement to an Indictment charging him with participation in a conspiracy to distribute and possess with the intent to distribute methamphetamine and heroin and knowingly and intentionally using a communication facility in committing and causing the facilitation of a felony controlled substance offense, in violation of 21 U.S.C. §§ 841(b)(1)(A), (C), 843(b), (d), and 846 (Count One), as well as knowingly and intentionally distributing and possessing with the intent to distribute a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Five).

The Presentence Investigation Report (PSR) recommends that Sebastian be attributed a drug weight of methamphetamine of at least 30.3076 kilograms.  PSR ¶ 193, ECF No. 1281.[1]  In addition, the PSR assumes that the methamphetamine was "Ice," that is, having a purity of at least 80%.  U.S. Sent'g Guidelines Manual (USSG) § 2D1.1(c) n.(C) (2018).   The guidelines establish a 10:1 ratio in their treatment of methamphetamine mixture and Ice methamphetamine. USSG § 2D1.1(c).[2]  The PSR recommends for Sebastian a Base Offense Level of 38, the highest level of the Drug Quantity Table, which would be the appropriate level for an offense involving more than 4.5 kilograms of Ice methamphetamine.[3]

The defendant objects both to the quantity of methamphetamine attributed to him and to the characterization of this methamphetamine as Ice.  On February 14,

---

[1]   Because of a misnumbering of certain paragraphs of Sebastian's original PSR, a corrected final version was recently filed.

[2]    For example, a defendant attributed with 500 grams of Ice methamphetamine mixture will have the same Base Offense Level as one attributed with five kilograms of non-Ice methamphetamine mixture. While some courts have rejected this ratio on the basis of a policy disagreement with the Sentencing Commission's guideline, I have previously declined to do so.  *United States v. Farris*, 421 F. Supp. 3d 321, 329–30 (W.D. Va. 2019), *appeal docketed,* No. 20-4225 (4th Cir. Mar. 19, 2020).  It's not entirely clear whether the defendant here makes the same request.  Hr'g Tr. 4–5, ECF No. 1004.  In any event, the court in its discretion is "not required to vary based on a policy disagreement with the Guidelines," *United States v. Hale,* No. 19-4482, 2020 WL 6778949, at *3 (4th Cir. Nov. 18, 2020) (unpublished), and I will not do so in this case.

[3]    While Count One charges that the object of the conspiracy also included heroin, no quantity of heroin is attributed to the defendant.

2020, an evidentiary hearing was held on these objections and the issues taken under advisement.  This Opinion resolves the objections.

## I. LEGAL PRINCIPLES.

In its task of determining drug quantity at sentencing in a drug trafficking case, the court must consider whether the government has established the quantity by a preponderance of the evidence.  *United States v. Cook*, 76 F.3d 596, 604 (4th Cir. 1996).  If the defendant objects to the quantity of drugs recommended in the PSR, the court must make an independent resolution of the factual issues raised by the objection by stating its findings or by expressly adopting the findings in the PSR. *United States v. Williams*, 152 F.3d 294, 300–01 (4th Cir. 1998).  If the objection fails to state why the finding is unreliable, untrue, or inaccurate, the court may adopt the findings of the presentence report without "more specific inquiry or explanation."  *Id.* at 301 (quoting *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990)).  Thus, a mere objection is insufficient.  "'The defendant has an affirmative duty to make a showing that the information in the Presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate.'" *United States v. Powell,* 650 F.3d 388, 394 (4th Cir. 2011) (quoting Terry, 916 F.2d at 162).

In the case of jointly undertaken criminal activity, a defendant's Base Offense Level may be determined on the basis of all the reasonably foreseeable acts of other

persons in furtherance of the jointly undertaken criminal activity. USSG § 1B1.3(a)(1)(B). In the context of a drug trafficking conspiracy, this means that a defendant's drug quantity may be determined on the basis of drugs distributed or possessed by coconspirators in furtherance of the conspiracy. *See United States v. Bell*, 667 F.3d 431, 442 (4th Cir. 2011). Even drugs consumed or possessed for personal use may be counted since what matters under the sentencing guidelines is the "total amount of drugs in circulation that a defendant was aware of or were reasonably foreseeable." *United States v. Williamson*, 953 F.3d 264, 272 (4th Cir.), *cert. denied,* No. 20-5759, 2020 WL 6121674 (U.S. Oct. 19, 2020).

In calculating drug amounts, the court may consider any relevant information, provided that the information has sufficient indicia of reliability to support its probable accuracy. *See United States v. Uwaeme*, 975 F.2d 1016, 1021 (4th Cir. 1992). Even hearsay alone can provide sufficiently reliable evidence of drug quantity. *See id.* "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." USSG § 2D1.1 cmt. n.5.

Importantly, however, "[d]istrict courts must still exercise caution in estimating drug quantity at sentencing, and not attribute speculative or scantily supported amounts to defendants." *Williamson*, 953 F.3d at 273.

## II. FACTUAL BACKGROUND.

Defendant Sebastian was one of 28 defendants indicted in this case. All were named in Count One, charging participation in a conspiracy to distribute and possess with the intent to distribute methamphetamine. Other counts of the Indictment charged individual defendants with specific crimes relating to this drug trafficking conspiracy. According to the PSR, an initial organizer of the conspiracy was Shawn Wayne Farris, who moved from California to Virginia in the fall of 2016 for the purpose of distributing methamphetamine and developing sub-distributors. Farris returned to California a year later and thereafter sent methamphetamine by mail and common carrier back to Virginia to his coconspirators for distribution. The defendant Sebastian, a methamphetamine user himself, both sold methamphetamine and had sub-distributors work on his behalf. PSR ¶ 175, ECF No. 1281. Text messages to and from Sebastian involving drug dealing were obtained by law enforcement and controlled purchases were made from him. A search warrant was executed at his home, which turned up high-purity methamphetamine, a large amount of cash, digital scales, numerous baggies, ammunition and a firearm. *Id.* at ¶ 191. A confidential source reported that Sebastian had obtained methamphetamine from Farris. *Id.* at ¶ 188. It is Sebastian's position that the quantity of drugs attributed to him is exaggerated and is actually not more than 1.5 kilograms and should not be treated as Ice. Hr'g Tr. 109, 119, ECF No. 1004. If Sebastian's

testimony were accepted, that might reduce his Base Offense Level to 32 or perhaps 30.[4]

At the evidentiary hearing on the defendant's objections, the government introduced through a DEA agent, Todd Brewer, a series of separate text messages between Sebastian and two coconspirators concerning methamphetamine sales of as much as a quarter or a half a pound. In addition, there were introduced text messages that indicated that Sebastian had suffered the theft of $8,000 in cash, which may have approximated the sales price of a pound of methamphetamine at the time. Hr'g Tr. 20, ECF No. 1004. The government also introduced the testimony of DEA Task Force Officer Chris Parks, who presented laboratory reports for two separate quantities of methamphetamine seized during the search of the defendant's residence on June 2, 2017. One sample, consisting of approximately 71.59 grams, had a purity of approximately 98%, and the second, approximately 4.19 grams, also had a purity of approximately 98%. Gov't Ex. 3, ECF No. 968-3. Officer Parks also introduced the laboratory analysis of a quantity of methamphetamine purchased from codefendant Sean Maidlow, one of coconspirators. Hr'g Tr. 35, 37, ECF No.

---

[4] Sebastian's lawyer put the question to him at the hearing that his position was that he was "freely admitting" that he was responsible for 500 grams "[b]ut not more than a kilo and a half," Hr'g Tr. 109, to which he agreed. She may have misspoken, since in her written memorandum on his behalf, she urged a Base Offense Level of 30, Sent'g Mem. 4, ECF No. 966, which would mean a weight of <u>less</u> than 1.5 kilograms of non-Ice methamphetamine, not 1.5 kilograms or more. *See* USSG § 2D1.1(c)(5).

1004.   That analysis, Gov't's Ex. 4, ECF No. 968-4, dated October 2, 2017, found one sample of approximately 112.23 grams, with a purity of approximately 95%, and a second sample of 222 grams, with a purity of approximately 95%.

Finally, the government called Amy Mann, an inmate convicted in another federal case who had lived with Sebastian.  She testified that from January until March of 2017, he sold, "rough estimate, yeah, one ounce a week, every couple days."  Hr'g Tr. 45, ECF No. 1004.  From April until his arrest,[5] it was one pound a week, approximately.  *Id.*  She also testified that she had assisted Sebastian by arranging drug sales to certain buyers.

The defendant called as a witness Larry Levi Bennett, one of Sebastian's 27 codefendants, who has been previously sentenced and whose case is on appeal.  He was attributed with more than 4.5 kilograms of the drug for sentencing purposes.  The defendant's PSR stated that Bennett was one of five coconspirators involved with Sebastian, making their drug quantities likely more reasonably foreseeable to Sebastian.  At the hearing, Bennett admitted knowing Sebastian for three or four months prior to being arrested, and being friends, but denied having bought or sold methamphetamine with him.  Hr'g Tr. 82–83, ECF No. 1004.  The defendant also called Tyler Kirk, a friend of Sebastian, who purchased methamphetamine from him

---

[5]   Sebastian was arrested by state authorities on June 2, 2017, when his residence was searched.  PSR ¶ 351, ECF No. 1281.

for three months in 2017, but "never saw lots of weight in his possession." *Id.* at 88. He also expressed an adverse view of Amy Mann's honesty.

A private investigator, Peter Sullivan, was called by the defendant to testify as to his interview with Amy Mann a week before the hearing. He testified that she had told him that starting in January or February Sebastian had obtained "about an ounce about every week to week and a half" and would sell half of that and use the other half himself. He said that she had related that beginning in April or May Sebastian had started buying more, and "bought maybe two, two and a half pounds during that time period. And that one of the pounds -- or some of it that he bought was found on him when he was arrested." *Id.* at 98.

Finally, Sebastian testified himself. He claimed that the largest quantity of methamphetamine he had ever bought was a quarter pound on two occasions and that the most he would sell would be quarter ounces. He agreed that Amy Mann was correct in that when he first met her, he was selling small amounts and toward the end he was selling larger amounts, but he disputed that the quantity ever got as large as she claimed. As to Larry Levi Bennett, he testified that "we probably had some kind of transactions at some point," and were "on the same conspiracy." *Id.* at 107. He testified that the largest quantity of methamphetamine he ever saw with Amy Mann was in the trunk of a car she was driving, which he estimated to be somewhere

between a kilogram or two, packaged in ounce quantities.   He stated that she was dealing drugs with "a lot of people in our conspiracy." *Id.* at 116.

As to Ice quality of the drug, the defendant testified, "We started getting the stuff, and I understood that it was from California and that it was more pure and that it was stronger.  But, like I said, that was just at the end -- at the end of what I was a part of.  Soon after I started getting that type of quality, I got arrested." *Id.* at 119.

### III.  FACTUAL FINDING AS TO QUANTITY.

As the government points out, accepting Amy Mann's testimony at the hearing about the quantity of methamphetamine obtained by the defendant comes very close to the amount attributed to him by the PSR.[6]

Of course, there are reasons to question the details of Mann's testimony. Mann has given different versions of Sebastian's drug dealing – an initial one to law enforcement, which she repudiated because she was under the influence of drugs; the one she told the defendant's private investigator prior to the hearing, in which she attributed a smaller quantity of methamphetamine to Sebastian; and finally her testimony under oath at the hearing.   In addition, she testified that until a week before the hearing, she had expected that she might receive a sentence reduction for her testimony for the government, which obviously would have given her a motive

---

[6]   By the government's calculation, her testimony at the hearing adds up to 3.920 kilograms possessed by Sebastian.  Hr'g Tr. 127, ECF No. 1004.

to lie.  On the other hand,  she made clear that her testimony as to times and quantities of drugs were "rough estimate[s]" and that a drug dealer's routine is "not going to be an exact science."  *Id.* at 47–48.  That obviously means, as one might expect, that in a chaotic world of drug dealing, there is unlikely to be a regular sale of drugs by quantity.

Nevertheless, considering the evidence as a whole, including that of Amy Mann, I find that the government has met its burden of proving that the PSR's recommended Base Offense Level is correct.

I understand Sebastian's argument that he personally did not handle the quantity of methamphetamine as alleged by the government, but of course the appropriate standard also encompasses the quantity reasonably foreseeable by him attributable to his fellow conspirators.

While I recognize the defects in Amy Mann's credibility, in light of her prior inconsistent statements, and her possible remaining motivation to help herself, it is clear that she did have a drug relationship with Sebastian that not only allowed her to view his own drug dealing, but gave him knowledge of her dealing with other members of the conspiracy.  I find her testimony at least partially creditable, and supports that she observed  the defendant obtaining at least one ounce per week from January 2017, increasing to one-quarter pound per week in April, and thereafter until

his arrest, obtaining two and a half pounds, for a total of 1.928 kilograms.[7]   In addition, Sebastian admitted observing another kilogram or two in Mann's possession with knowledge that she dealt with others in the conspiracy charged in this case.

Sebastian denied that the amount stolen from him was $8,000 and claimed it to be only $1,500.  I find it more likely than not that the cash earlier stolen from him was $8,000 in drug proceeds, which supports an approximate half kilogram to be attributed to Sebastian.  This evidence supports Mann's testimony.

The PSR noted Sebastian's particular involvement in drug sales with other coconspirators, including Donald Hawthorne and Larry Levi Bennett.  PSR ¶ 193, ECF No. 1281.  The PSR described substantial quantities of methamphetamine in the hands of those defendants.   Only Bennett testified at the hearing.  He admitted that he and Sebastian were friends but denied that they had bought and sold methamphetamine together and claimed, without specifics, that he had been a "minimal participant" in the conspiracy.  Nevertheless, the details in the PSR show the large amount of drugs Bennett was involved with, which his friend Sebastian

---

[7]   This calculation essentially follows the statement made to the defendant's private investigator.  That witness also testified that Mann claimed that Sebastian personally used a large portion of the drugs that he obtained, but as noted above it is settled that "drugs consumed or possessed for 'personal use' may be counted as relevant conduct at sentencing for the crime of conspiring-to-distribute a controlled substance."  *United States v. Williamson*, 953 F.3d at 270.

reasonably would have known about.   I do not credit Bennett's testimony and I believe that, as set forth in the PSR, he received methamphetamine for distribution worth $49,000 indirectly from Shawn Wayne Farris, the leader of the conspiracy, which, according to the evidence, would approximate seven pounds or 3.175 kilograms.  PSR § 203, ECF No. 1281.

Similarly, the PSR's description of the drug distributions by other defendants involved with Sebastian, which have not been credibly disputed, support the attribution of the guideline quantity proposed for the defendant.

Based upon the above factual findings, I determine that the evidence from the hearing and the PSR supports a reasonable estimate of the following quantities of methamphetamine attributable to defendant Sebastian, either received by him personally or reasonably foreseeable by him to be in the scope of his participation in the conspiracy:

Sebastian's receipt based on Amy Mann's testimony – 1.928 kilograms;

Sebastian's foreseeability from Amy Mann's possession in her car – 1 kilogram;

Sebastian's foreseeability from Larry Levi Bennett' receipt of seven pounds from Shawn Wayne Farris – 3.175 kilograms;

Sebastian's foreseeability from Donald Hawthorne's sale to a confidential informant  – 230.3 grams;

For a total of not less than 6.333 kilograms.

## IV.  FACTUAL FINDINGS AS TO ICE.

The government does not contest that it has the burden of proof to show that USSG § 2D1.1(c) n.(C) should be applied.  It supports that burden with the evidence that the methamphetamine seized from Sebastian's residence when he was arrested was analyzed as Ice.  Sebastian does not dispute that analysis, but explains simply, "[t]owards the end I got some really good dope.  But 80 percent of this, the investigation that I was involved with, no, I don't think it was ever ice."   Hr'g Tr. 119, ECF No. 1004.  But he also testified that the quantity of methamphetamine he obtained increased as time went on.  Moreover, the government introduced reports of analysis of methamphetamine purchased from coconspirator Sean Maidlow, which had a purity of 95%.  Maidlow supplied drugs to Donald Snyder, who in turn supplied Sebastian.  PSR ¶¶ 57, 62, 165, ECF No. 1281.  I find there is adequate evidence to apply the Ice guideline to Sebastian.

## V.  CONCLUSION.

For the foregoing reasons, the objections by the defendant are DENIED.  I find that the defendant has a Base Offense Level of 38 based on offenses that involved more than 4.5 kilograms of Ice methamphetamine.  USSG § 2D1.1(c)(1).  To the extent there are any objections not covered in this Opinion, I adopt the

Probation Officer's response contained in the Addendum to the Presentence Investigation Report.

It is so **ORDERED**.

ENTER:   January 19, 2021

/s/  JAMES P. JONES
United States District Judge